UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br><br>v.<br><br>JOSE LUIS CASTILLO,<br><br>                        Defendant. | Case No.: 3:20-cr-01570-JAH-1<br><br>**AMENDED ORDER:**<br><br>**1) GRANTING PARTIES' MOTIONS TO SHORTEN TIME;**<br><br>**2) DENYING DEFENDANT'S MOTIONS TO REWEIGH DRUGS AND TO DISMISS INDICTMENT**<br><br>**[ECF Nos. 114, 115, 120]** |

**INTRODUCTION**

Pending before the Court are Defendant JOSE LUIS CASTILLO's ("Defendant") Motion to Reweigh Drugs and Motion to Dismiss Indictment (collectively, "Motions"). ECF No. 114. The government opposed the Motions. *See* ECF Nos. 116-19. After a thorough review of the record, and for the reasons described below, the Court **DENIES** Defendant's Motions.

1

**MOTIONS TO SHORTEN TIME**

On April 15, 2026, the Court set a deadline requiring all motions to be due on May 8, 2026, and responses due on May 15, 2026.  ECF No. 113.  On May 10, 2026, Defendant filed the Motions.  ECF No. 114.  On May 11, 2026, Defendant filed a motion to shorten time, requesting the Court accept the late filing due to technological issues.  ECF No. 115.

On May 15, 2026, the government filed an opposition to the Motions.  ECF No. 116. On May 19, 2026, the government filed a notice of lodgment (Exhibit 1) and supplemental briefing in support of its opposition.  ECF Nos. 117, 118.  On May 20, 2026, the government filed a motion to file Exhibits 3 and 4 under seal, which the Court granted. ECF No. 119.  On May 22, 2026, the government filed its own motion to shorten time, requesting the Court accept the late filings due to communication issues.  ECF No. 120.

Good cause appearing, and in the interest of justice, the Court **GRANTS** both Defendant's and the government's motions to shorten time.

**BACKGROUND**

On May 12, 2020, Defendant applied for entry into the United States from Mexico through the San Ysidro Port of Entry.  ECF No. 116 at 1-2.  After an investigation by Customs and Border Protection officers, two packages were removed from Defendant's person/body.  *Id.* at 3.  The packages weighed approximately 1.30 kilograms and field-tested positive for heroin.  *Id.*  On June 11, 2020, Defendant was arrested and charged with Importation of Heroin, in violation of 21 U.S.C. Sections 952 and 960.  ECF No. 114 at 4.

On July 30, 2020, Defendant failed to attend his initial appearance.  *Id.*  The initial appearance was continued until August 13, 2020, and then continued until August 14, 2020. *Id.*  Defendant once again failed to appear, and a bench warrant was issued for Defendant's arrest.  *Id.*

On or around May 12, 2022, approximately two years following Defendant's arrest, the drugs previously seized from Defendant were destroyed by the government in accordance with 28 Code of Federal Regulations § 50.21.  ECF No. 116 at 6-7.  Section 50.21 "provides procedures governing the destruction of contraband drug evidence in the

2

custody of Federal law enforcement authorities." ECF No. 118 at 1; *see also* 28 C.F.R. § 50.21. The regulation is "intended to prevent the warehousing of large quantities of seized contraband drugs which are unnecessary for due process in criminal cases." 28 C.F.R. § 50.21(c). Consistent with the regulation, the Department of Homeland Security outlines its procedures governing the pretrial destruction of drug evidence in an April 30, 2021, memorandum entitled "Laboratory Sample Submissions and Pretrial Destruction of Bulk Drug Evidence." ECF No. 119, Ex. 3 ("DHS Memo") (under seal). Prior to the destruction of the drug evidence seized from Defendant, there was no motion by Defendant to preserve evidence in this case, nor did the Court order the government to retain the seized drugs. *See* Docket.

On April 28, 2024, Defendant was arrested. *Id.* On May 13, 2024, Defendant filed a motion to preserve evidence, which in part included a request to preserve the drugs. ECF No. 28. On May 10, 2026, Defendant filed the operative Motions. ECF No. 114. Defendant alleges his constitutional right to due process was violated when the government destroyed the drugs, thus preventing him from presenting a complete defense. *See Id.*

## DISCUSSION

### I.   Motion to Reweigh Drugs

"[I]n the event that the drugs resurface, [Defendant] moves for an order directing the government to make the controlled substance evidence available for reweighing." ECF No. 114 at 6. Defendant is aware, and the government admits, that the drug evidence in this case was destroyed on or around May 12, 2022. *Id.*; ECF No. 16 at 6-7. Further, Defendant did not file a motion to preserve the drug evidence until May 13, 2024. ECF No. 28. Therefore, the Court **DENIES AS MOOT** Defendant's Motion to Reweigh Drugs.

### II.   Motion to Dismiss Indictment

Defendant moves to dismiss the indictment because the government destroyed the drug evidence, which Defendant asserts is a violation of his constitutional right to due process. ECF No. 114 at 7-13. The government opposes the Motion, asserting that

3:20-cr-01570-JAH-1

Defendant cannot show a due process violation because the drug evidence was neither exculpatory nor destroyed in bad faith.  ECF No. 116 at 9-13.

The Constitution guarantees criminal defendants a "meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984); *U.S. v. Stever*, 603 F.3d 747, 755 (9th Cir. 2010).  Defendants have a constitutionally protected privilege to access evidence "that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *Trombetta*, 467 U.S. at 485.  Further, "the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." *Id.*

A due process violation occurs when the prosecution suppresses, or fails to disclose, evidence favorable to the defendant if the evidence is material either to guilt or to punishment, regardless of whether the prosecution acted in good faith or bad faith. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988). However, a due process violation does not necessarily occur when the prosecution fails to preserve potentially useful evidence "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57.  Therefore, "unless a criminal defendant can show bad faith on the part of the [prosecution], failure to preserve potentially useful evidence does not constitute a denial of due process of law."  *Id.* at 58.  Whether the *Youngblood* bad faith requirement applies depends "on the distinction between 'material exculpatory' evidence and 'potentially useful' evidence." *Illinois v. Fisher*, 540 U.S. 544, 549 (2004).

### a. Material Exculpatory Evidence

To be constitutionally material, evidence must 1) "possess an exculpatory value that was apparent before the evidence was destroyed," and 2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489.  To constitute bad faith, the prosecution must have known of the apparent exculpatory value of the evidence at the time it was lost or destroyed.

*U.S. v. Zaragoza-Moreira*, 780 F.3d 971, 977 (9th Cir. 2015). Evidence cannot be destroyed in bad faith "without knowledge of the potential usefulness of the evidence." *Id.*

Here, Defendant argues that the drug evidence destroyed by the government satisfies the standard for materially exculpatory evidence. ECF No. 114 at 8. Specifically, Defendant argues the "exculpatory value was apparent before destruction because independent testing could have shown that the substance was not a controlled substance, or that the weight was below the statutory threshold for the charged offense." *Id.* In opposition, the government argues that the circumstances in *Fisher* are analogous to the facts here, thus the evidence is not materially exculpatory. ECF No. 116 at 11.

In *Fisher*, the defendant was arrested during a traffic stop during which police observed him attempting to hide a plastic bag containing a white powdery substance. *Fisher*, 540 U.S. at 545. After testing by city and state crime labs, the white substance was confirmed as cocaine. *Id.* Eight days later, the defendant filed a discovery motion requesting all physical evidence intended to be used at trial. *Id.* However, the defendant failed to appear in court and remained a fugitive for over 10 years before being arrested and charged with cocaine possession. *Id.* Prior to trial, the police, "acting in accord with established procedures," destroyed the drugs seized from the defendant during his arrest. *Id.* at 546.

The Supreme Court in *Fisher* held that the drugs seized from the defendant "was plainly the sort of potentially useful evidence referred to in *Youngblood*." *Id.* at 548 (internal quotation marks omitted). The Court reasoned that "police testing indicated that the chemical makeup of the substance inculpated, not exculpated, [defendant], . . . and it is undisputed that police acted in good faith and in accord with their normal practice." *Id.* Further, the Court reasoned that, at best, another test conducted on the substance could have been useful to exonerate the defendant. *Id.* Therefore, the defendant failed to establish a due process violation. *Id.*

This Court agrees with the government that *Fisher* is analogous and the destroyed drugs that were seized from Defendant constitutes potentially useful evidence, as opposed

3:20-cr-01570-JAH-1

to material exculpatory evidence. First, the drugs seized from Defendant were tested and verified to be heroin. *See* ECF No. 116-2, Ex. 2 ("Chemical Analysis Report"). Also, the drugs seized from Defendant were weighed to be approximately 1.30 kilograms, both on the day of Defendant's May 2020 arrest, and again at the facility that produced the Chemical Analysis Report. *Id.*; ECF No. 116 at 3. After the drugs' identity and weight were verified through the Chemical Analysis Report, the drugs were destroyed consistent with procedures described in the DHS Memo[1]. ECF No. 116 at 12.

Given the facts here, the drug evidence does not meet the *Trombetta* standard for material exculpatory evidence. *Trombetta*, 467 U.S. at 489. Instead, the drug evidence is "plainly the sort of potentially useful evidence referred to in *Youngblood*." *Fisher*, 540 U.S. at 548 (internal quotation marks omitted). As in *Fisher*, the Chemical Analysis Report regarding the drugs' identity and weight inculpates, not exculpates, Defendant. *Id.* In addition, the weight of the drug evidence was significantly beyond one kilogram, the minimum quantity to support the mandatory minimum charging decision. *See* ECF No. 1. At best, another test conducted on the drugs, or a calibration of the scale on which the drugs were weighed, could have been useful to exonerate Defendant. *Id.*; *see also Trombetta*, 467 U.S. at 489 ("Although the preservation of [evidence] samples might conceivably have contributed to respondent's defenses, . . . the chances are extremely low that preserved samples would have been exculpatory"). Therefore, the Court finds that the drug evidence seized from Defendant is "potentially useful evidence" that requires a showing of bad faith to constitute a due process violation. *Youngblood*, 488 U.S. at 58; *Fisher*, 540 U.S. at 549.

---

[1] In his Motion, Defendant also raises a Sixth Amendment Confrontation Clause argument. *See* ECF No. 114 at 12-13 ("[Defendant] has had no opportunity, pretrial, to cross-examine [the] analyst who performed the analysis of the heroin and signed the laboratory report. [If] that particular analyst is not available for trial, any testimony regarding the contents of the report would be in violation of [Defendant's] Sixth Amendment confrontation rights . . . ."). In response, the government asserts, "[a]bsent a stipulation, the government would call the analyst . . . to testify regarding the drugs she personally tested and the lab report prepared documenting her findings." ECF No. 116 at 13. In that the analyst is available to testify at trial, Defendant's Sixth Amendment Confrontation Clause motion is **DENIED**.

3:20-cr-01570-JAH-1

### b. Bad Faith Requirement

In the alternative, Defendant argues that the government acted in bad faith when it destroyed the potentially useful drug evidence. ECF No. 114 at 9-10. Defendant relies upon *Zaragoza-Moreira* for the proposition that the government's destruction of the drug evidence in this case constitutes bad faith. *Id.* at 10-11. The government argues in opposition that the facts in *Zaragoza-Moreira* are not analogous. ECF No. 116 at 10. //

"[W]hen potentially useful evidence has been destroyed by the government, the bad faith inquiry initially turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed." *Zaragoza-Moreira*, 780 F.3d at 979. In *Zaragoza-Moreira*, the government destroyed video evidence that "was potentially useful evidence to support defendant's claim of duress." *Id.* at 978. The Ninth Circuit found that the border agent's actions of destroying the video constituted bad faith. *Id.* at 980. The Circuit reasoned that the agent had a professional obligation to collect both exculpatory and inculpatory evidence, was repeatedly alerted to the defendant's duress claim, knew of the apparent exculpatory value of the video evidence, yet did not attempt to view nor preserve the evidence before it was destroyed. *Id.* at 979-80. Therefore, the agent's actions were "sufficient to establish that she made a conscious effort to suppress exculpatory evidence, thereby acting in bad faith." *Id.* at 980 (internal quotation marks omitted).

The facts here are easily distinguishable from those in *Zaragoza-Moreira*. For one, the drug evidence seized from Defendant was tested and verified as heroin, and its weight was verified to be well above the statutory threshold. *See* Chemical Analysis Report. The Court agrees with the government's argument that the "exculpatory value of the destruction of the drugs in this case would exist if the government had no evidence that the drugs were found on the Defendant . . . ." ECF No. 116 at 10. More critical to the Court's bad faith analysis is the fact that, unlike *Zaragoza-Moreira*, the drug evidence was "destroyed in the normal course of the government's usual procedures." *Zaragoza-Moreira*, 780 F.3d at

3:20-cr-01570-JAH-1

980.  Lastly, Defendant's argument that he "filed a motion requesting preservation of the evidence" is unavailing because the motion was filed in 2024, two years after the drugs had been destroyed in 2022, which was two years after Defendant was arrested in 2020. Therefore, the Court finds that the government did not act in bad faith when it destroyed the drug evidence in the normal course of business.

In sum, the Court finds that the drug evidence seized from Defendant was potentially useful evidence that was not destroyed in bad faith.  Thus, the government did not violate Defendant's right to due process.  Therefore, the Court **DENIES** Defendant's Motion to Dismiss the Indictment.

## CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED**:

1) Defendant's Motion to Reweigh Drugs is **DENIED AS MOOT**.

2) Defendant's Motion to Dismiss the Indictment is **DENIED**.

**IT IS SO ORDERED.**

Dated:  July 7, 2026

_____
Hon. John A. Houston
United States District Judge

3:20-cr-01570-JAH-1